[Cite as *State v. Mims*, 2023-Ohio-1044.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellant,          :

                                     No. 111780

    v.                            :

JAMONE MIMS,                            :

    Defendant-Appellee.           :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED IN PART AND REMANDED
**RELEASED AND JOURNALIZED:** March 30, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-660626-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory J. Ochocki, Assistant Prosecuting Attorney, *for appellant.*

Cullen Sweeney, Cuyahoga County Public Defender, and Robert B. McCaleb and John T. Martin, Assistant Public Defenders, *for appellee.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals the sentence imposed on defendant-appellee Jamone Mims for felonious assault with a firearm specification.

The state argues that the trial court improperly applied jail-time credit to the mandatory prison term imposed on the specification.

{¶ 2} For the reasons that follow, we find the state's appeal to be ripe and the trial court's application of jail-time credit to be contrary to law. We therefore reverse the judgment, in part, by modifying it to delete the request that jail-time credit be applied to the mandatory prison term.

## I.    Factual Background and Procedural History

{¶ 3} On August 12, 2021, a Cuyahoga County Grand Jury indicted Jamone Mims for, among other things, felonious assault in violation of R.C. 2903.11(A)(2) with a one-year firearm specification pursuant to R.C. 2941.141(A). On May 11, 2022, Mims pleaded guilty to that charge and specification. The state dismissed the remaining counts in the indictment.

{¶ 4} On June 27, 2022, the trial court imposed a sentence of one year in prison on the firearm specification, to be served prior, and consecutive, to an indefinite sentence of two to three years in prison on the underlying felonious-assault conviction.

{¶ 5} At the sentencing hearing, Mims' counsel made the following request:

> Your Honor, I would also ask that, based on his position, based on the fact that he's been here 20 months, I would ask you to find him indigent in terms of fines and court costs. I would also ask this Court to consider an entry that would give him credit for the one-year firearm specification while he's been in jail. I would ask the Court to consider that because he has been in for 20 months here.

**{¶ 6}** The court addressed the request as follows during the hearing:

I will put language in the journal entry because I think the situation with the pandemic and our inability to properly process your case and bring it to a resolution does impact you differently. It hits differently because of the pandemic. So I will put language that at the time that you have spent, the credit that you get shall be credited to the one-year firearm specification and any remaining credit will go towards your underlying sentence.

Now, whether the Ohio Department of Rehabilitation & Correction[] disregards that order, I don't know. I don't know how they process those orders because typically time served does not go towards the firearm specifications. I'm going to put it in my entry and I hope that they abide by it.

**{¶ 7}** The court calculated Mims' jail-time credit to be 588 days.[1] The state objected to the allocation of this jail-time credit to the firearm specification.

**{¶ 8}** The trial court thereafter reduced its sentence to a journal entry, which stated as follows, in relevant part:

The court imposes a prison sentence at the Lorain Correctional Institution of 3 year(s). Ct.2: 1 year firearm spec runs prior and consecutive to 2 year underlying sentence. The sentence imposed upon Defendant is an indefinite sentence under SB 201 – Reagan Tokes Law. The aggregate minimum term imposed by the Court is 2 years. The maximum term is 3 years. * * * Court is requesting jail credit shall be applied to firearm spec and remainder to be applied to underlying sentence.

**{¶ 9}** The state sought leave to appeal the sentence pursuant to App.R. 5(C) and R.C. 2945.67 and our court granted leave. The state raises one assignment of error for review:

---

[1] Mims was arrested months before his indictment; the amount of jail credit the court awarded is not in dispute.

The trial court erred when it requested that defendant's jail-time credit be applied to the portion of the sentence imposed for a firearm specification.

{¶ 10} Mims filed a responsive brief and also moved to dismiss the appeal. He argued that the issue is not ripe and that our court lacks jurisdiction to hear the appeal. The state opposed the motion and the parties addressed the motion at oral argument. We denied the motion,[2] a decision that we explain here before reaching the merits of the appeal.

## II. Law and Analysis

### A. Ripeness and Jurisdiction

{¶ 11} We first address Mims' argument that the appeal is not ripe and that we lack jurisdiction to hear the appeal.

### 1. The Appeal Is Ripe

{¶ 12} With respect to ripeness, Mims contends that the only circumstance in which it would matter which portion of the sentence the credit is applied against is if he is granted judicial release before serving one full year in prison (the length of the mandatory term). If Mims does not obtain judicial release, the argument goes, then he will be released on the same day whether the credit is applied to the specification portion of the sentence or the underlying felony portion. Mims says the state's argument would only become ripe if Mims applies for, and is granted, judicial release before actually serving one year in prison.

---

[2] *State v. Jamone Mims*, 8th Dist. Cuyahoga No. 111780, Motion No. 561663 (Feb. 15, 2023).

{¶ 13} The state argues that the issue is ripe following the Supreme Court's opinion in *State v. Smith*, 131 Ohio St.3d 297, 2012-Ohio-781, 964 N.E.2d 423. We agree that the issue is ripe for adjudication.

{¶ 14} "'In order to be justiciable, a controversy must be ripe for review.'" *State v. Maddox*, 168 Ohio St.3d 292, 2022-Ohio-764, 198 N.E.3d 797, ¶ 7, quoting *Keller v. Columbus*, 100 Ohio St.3d 192, 2003-Ohio-5599, 797 N.E.2d 964, ¶ 26. To consider ripeness is to consider the constitutional and prudential justiciability of a controversy. *See Maddox* at ¶ 8; *see also Natl. Park Hospitality Assn. v. Dept. of Interior*, 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (holding that the issue of ripeness stems from constitutional limits on judicial power, as well as prudential reasons for refusing to exercise jurisdiction). The constitutional requirements of the ripeness doctrine are met "'if a threatened injury is sufficiently "imminent" to establish standing * * *.'" *Maddox* at ¶ 8, quoting *Natl. Treasury Emps. Union v. United States*, 101 F.3d 1423, 1428 (D.C.Cir.1996). "The prudential-justiciability concerns include (1) whether the claim is fit for judicial decision and (2) whether withholding court consideration will cause hardship to the parties." *Maddox* at ¶ 8, citing *Hill v. Snyder*, 878 F.3d 193, 213 (6th Cir.2017). A controversy is fit for judicial decision when "'[t]he issue presented in th[e] case is purely legal, and will not be clarified by further factual development.'" *Maddox* at ¶ 8, quoting *Thomas v. Union Carbide Agricultural Prods. Co.*, 473 U.S. 568, 581, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985).

{¶ 15} Mims tries to cast this case as one of executive-agency discretion, but it is not. This case concerns the imposition of a sentence that the state says is contrary to black-letter statutory law. *See State v. Gamble*, 2021-Ohio-1810, 173 N.E.3d 132, ¶ 26 (8th Dist.) (comparing challenges to the imposition of a sentence with the ripeness of due-process claims based on an executive agency's execution of that sentence). The injury, if there is one, already exists; Mims "ha[s] received the entirety of [his] sentence[] and the sentence[] ha[s] been journalized." *See Maddox* at ¶ 16.

{¶ 16} The state is not asking us to address an abstract or hypothetical or remote issue here, nor would we be "'entangling [ourselves] in abstract disagreements over administrative policies'" by taking up the state's appeal. *See State ex rel. Elyria Foundry Co. v. Indus. Comm. of Ohio*, 82 Ohio St.3d 88, 89, 694 N.E.2d 459 (1998), quoting *Abbot Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). And no further factual development would clarify the purely legal issue at hand — whether the trial court's application of jail-time credit to the mandatory firearm specification was contrary to law under the facts of the case.

{¶ 17} If we do not resolve this legal issue now, an issue we are perfectly capable of reviewing at this time, our decision would cause hardship to the parties.

{¶ 18} If the Ohio Department of Rehabilitation and Correction ("DRC") applies the credit to the specification time, the state may not be able to assert a challenge to the imposition of this sentence in judicial-release briefing as easily as

Mims suggests. Ohio has returned "to the traditional distinction between void and voidable" sentences such that "'sentences based on an error, including sentences in which a trial court fails to impose a statutorily mandated term, are voidable if the court imposing the sentence has jurisdiction over the case and the defendant.'" *Gamble* at ¶ 22, quoting *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, 162 N.E.3d 776, ¶ 1. "If the sentencing error rendered the defendant's sentence voidable, the error cannot be corrected through a postconviction proceeding or though another form of collateral attack." *Gamble* at ¶ 22, citing *Henderson* at ¶ 43.

{¶ 19} On the other hand, if DRC does *not* apply the credit to the firearm specification when it should have done so, Mims may never be able to effectively challenge that determination either. In addition to the "void and voidable" issue just mentioned, a trial court may deny a motion for judicial release without a hearing and without making any specific findings — *State v. Cruz*, 8th Dist. Cuyahoga No. 109770, 2021-Ohio-947, ¶ 12, citing R.C. 2929.20 — and a denial of a judicial-release motion is not generally considered a final, appealable order. *E.g.*, *id.* at ¶ 6 (collecting cases).

{¶ 20} We are, therefore, persuaded that the appeal is constitutionally and prudentially justiciable; it is ripe. *See also Olmsted Twp. v. Ritchie*, 2022-Ohio-124, 181 N.E.3d 649, ¶ 2–6, 8, 10, fn. 2 (8th Dist.) (finding ripeness in defendant's challenge to sentencing entries that erroneously stated that jail time was available on misdemeanor sentences, which could be imposed upon a violation of community control, despite the fact that no jail time had in fact been imposed on the defendant);

*State ex rel. Fraley v. Ohio Dept. Rehab. & Corr.*, 161 Ohio St.3d 209, 2020-Ohio-4410, 161 N.E.3d 646, ¶ 17 ("If the entries contained a legal error favoring Fraley, then the state should have appealed the error.").

### 2. **We Have Jurisdiction to Hear the Appeal**

{¶ 21} With respect to our jurisdiction, Mims argues that, while the trial court "requested" that the DRC apply jail-time credit to the mandatory term, "there is no evidence that DRC followed this request." He contends that the trial court's "request" regarding jail-time credit was not a decision that can be appealed under R.C. 2945.67 or 2953.08. He asserts that the request "does not make the sentence contrary to law unless the request is actually honored by DRC." We disagree.

{¶ 22} As the state points out, "[a] court speaks through its journal entries" and "DRC's role is not to correct a sentencing court's errors and impose the sentence it believes the court should have imposed." *Fraley* at ¶ 17. "To the contrary, DRC is obliged to execute the sentence imposed by the court." *Id.*, citing *State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, 85 N.E.3d 700, ¶ 21, *overruled on other grounds*, *State v. Hudson*, 161 Ohio St.3d 166, 2020-Ohio-3849, 161 N.E.3d 608.

{¶ 23} We are aware that trial courts sometimes request that DRC exercise its discretion with respect to a defendant, making a request for a certain diet, for example. We do not consider a request like that in this appeal. The trial court made a "request" as to something that is *not* within DRC's discretion, since the request went to the imposition of sentence itself. We would not deny the state appellate review here, just as we would not deny a defendant appellate review of a sentencing

entry that said something like, "Defendant sentenced to two years in prison for felonious assault, request that he be awarded no jail-time credit" or "Defendant sentenced to one year in prison, request that DRC hold him for fourteen months."

{¶ 24} The trial court's sentencing entry was a final, appealable order and it applied jail-time credit to the mandatory prison term imposed on the firearm specification. We have jurisdiction to hear the appeal.

{¶ 25} Having concluded that the issue is ripe for review and that we have jurisdiction, we turn to the merits of the case.

## B. Application of Jail-Time Credit to Mandatory Prison Term

{¶ 26} We review felony sentences under the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 21. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce or otherwise modify a sentence or vacate a sentence and remand for resentencing if it "clearly and convincingly" finds that (1) the record does not support certain of the sentencing court's findings or (2) the sentence is "otherwise contrary to law." "'Clear and convincing evidence is that measure or degree of proof * * * which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *State v. Franklin*, 8th Dist. Cuyahoga No. 107482, 2019-Ohio-3760, ¶ 29, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 27} The state's assignment of error is straightforward. The state argues that a sentencing entry that applies jail-time credit to a mandatory prison term

imposed for a firearm specification is contrary to law under the plain language of R.C. 2929.14(B)(1)(b) and the Ohio Supreme Court's decision in *State v. Moore*, 154 Ohio St.3d 94, 2018-Ohio-3237, 111 N.E.3d 1146, ¶ 32.  The state asks us to reverse the judgment and remand the matter "for a limited resentencing hearing to vacate the portion of the sentencing entry applying Mims's jail-time credit to the mandatory prison sentence imposed for the firearm specification."

{¶ 28} Mims concedes that the Supreme Court in *Moore* held that jail-time credit cannot be applied to mandatory sentences imposed for firearm specifications. He nevertheless defends the sentence as an appropriate exercise of the trial court's judicial discretion considering the "unique circumstances" of his pretrial detention, which he says was "exceptionally long" due to the COVID-19 pandemic, withdrawals of counsel and his indigency.  He contends that *Moore* was wrongly decided and "issued what amounted to an advisory opinion" about whether R.C. 2929.14(B) denies indigent defendants equal protection of the laws.  He suggests, without significant analysis, that to apply R.C. 2929.14(B) here would deny Mims equal protection of the laws because Mims was unable to pay the $100,000 bond set in his case and was found indigent.

{¶ 29} The state responds by arguing that the trial court did not have the discretion to impose this sentence and that Mims did not raise an equal-protection argument in the trial court and "cannot raise a constitutional issue for the first time on appeal," citing *Powell v. Williams*, 2022-Ohio-526, 185 N.E.3d 595, ¶ 10 (8th Dist.).  The state also contends that there was no equal-protection violation here

because even if we were to reverse, Mims "would not spend a single extra day in confinement than if he had made bail after his first appearance."

{¶ 30} Mims asks that, if we do reverse the sentence, we remand the matter for "limited resentencing" "for the sole purpose of ensuring that the 588 days of jail time credit are applied to the non-mandatory portion of Mr. Mims's sentence."

{¶ 31} We address Mims' argument regarding judicial discretion first. "[T]he General Assembly has the plenary power to prescribe crimes and fix penalties." *State v. Morris*, 55 Ohio St.2d 101, 112, 378 N.E.2d 708 (1978). Thus, "'the only sentence which a trial judge may impose is that provided for by statute * * *.'" *State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, 35 N.E.3d 512, ¶ 12, quoting *State v. Beasley*, 14 Ohio St.3d 74, 75, 471 N.E.2d 774 (1984). "'Judges have no inherent power to create sentences.' Rather, judges are duty-bound to apply sentencing laws as they are written." (Citations omitted.) *Anderson* at ¶ 10, quoting *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 22.

{¶ 32} In other words, however well-intentioned a trial court may be in crafting a criminal sentence, it has no discretion to impose a sentence that is contrary to law. Therefore, our resolution of the state's assignment of error will turn on whether Mims' sentence is contrary to law.

{¶ 33} We find that the court's application of jail-time credit is contrary to law. The Supreme Court in *Moore* held that R.C. 2929.14(B)(1)(b) does not allow jail-time credit to be applied to mandatory firearm-specification sentences. *Moore*,

154 Ohio St.3d 94, 2018-Ohio-3237, 111 N.E.3d 1146, at ¶ 15.  Because that is exactly what the trial court did here, the sentence violates R.C. 2929.14(B).

{¶ 34} Mims does not dispute that *Moore* is binding precedent on this question of statutory interpretation.  Instead, he argues on appeal that application of R.C. 2929.14(B) in this case would deprive Mims of the equal protection of the law.

{¶ 35} Even if this argument is not waived, we would find no equal-protection violation here because the same argument was considered and rejected by the Supreme Court's opinion in *Moore*.

{¶ 36} Mims was declared indigent and says that he remained detained throughout his case because he could not afford the $100,000 bond set for him.  His equal-protection argument is that he will be treated differently than nonindigent defendants if the jail-time credit is not applied to his firearm-specification sentence.  Mims does not clearly explain what differential treatment he expects, but the argument seems to go as follows:  A nonindigent defendant would have posted bond.  Both Mims and a nonindigent defendant would be able to apply for judicial release six months after serving the one-year mandatory firearm sentence.  But because Mims was indigent and could not pay his bond, Mims would "lose" jail-time credit if he were granted judicial release where a nonindigent defendant would not.

{¶ 37} The Supreme Court expressly rejected this theory of differential treatment in *Moore*. *Moore* at ¶ 29.  The court of appeals in that case had found that "'giving full credit to an offender may require applying [jail-time] credit to a

mandatory term when otherwise the potential length of the stated prison sentence is not accurately reflective of the time the offender's liberty was restrained.'" *Moore* at ¶ 27, quoting *State v. Moore*, 2017-Ohio-673, 85 N.E.3d 547, ¶ 26 (6th Dist.).

{¶ 38} In rejecting that reasoning as applied to Moore, the Supreme Court reasoned that the defendant's complaint in *Moore* "is not that he lost his jail-time credit but that the credit was not allocated in the manner in which he prefers." *Moore*, 154 Ohio St.3d 94, 2018-Ohio-3237, 111 N.E.3d 1146, at ¶ 29. The court continued by noting that the defendant "*could* lose his jail-time credit because he would not be able to use it if he were granted judicial release" (emphasis sic), but it held that this loss would not be an injury to the defendant because "there is no right to judicial release." *Id.* Moreover, the court reasoned that a defendant does not actually "lose" jail-time credit at all because any remaining credit would be applied to any sentence imposed if the defendant were to violate a condition of release. *Id.*

{¶ 39} The same reasoning applies to Mims. He will not be denied jail-time credit if we reverse; the credit will be applied to the portion of his sentence for the underlying felony. It is possible that Mims will not be able to use all of his jail-time credit if he is granted judicial release, but he does not "lose" that credit because any remaining credit would be applied to a sentence imposed if he were to violate a condition of release. Moreover, if Mims is granted judicial release, "he will suffer no injury: judicial release will give [him] exactly what he wants from jail-time credit—not being in prison." *Moore* at ¶ 29.

**{¶ 40}** Because the trial court's application of jail-time credit was contrary to law, we sustain the state's assignment of error.

### III. Conclusion

**{¶ 41}** Having sustained the state's sole assignment of error for the reasons stated above we reverse the judgment, in part. Because both parties have asked for resentencing, we remand this matter for a limited resentencing. The trial court is directed to vacate its prior sentencing order and issue a new journal entry that does not include a request to apply jail-time credit to the mandatory prison term but instead applies that credit to the underlying felony sentence.

It is ordered that the appellant recover from the appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
EILEEN T. GALLAGHER, J., CONCUR